IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re:     Michael Scott Mogan | ) | 22 B 01957 |
| Debtor(s) | ) | |
| | ) | Judge: Honorable David D. Cleary |
| | ) | |

**DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION
UNDER CHAPTER 11**

Michael Scott Mogan ("Debtor") files this Plan of Reorganization under Chapter 11. Petitioner is seeking to repay his debts over time pursuant to the terms of the Plan of Reorganization. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on Debtor and on all creditors and interest holders in this case.

Debtor represents that everything in this document is true to the best of his knowledge.

**Plan Payments and Length Of Plan**

Debtor will make regular bi-annual payments to the unsecured creditors in an amount of $1,858 twice a year over a 3 year period with the first payment commencing February 28, 2025.

The total amount of estimated payments to the unsecured creditors is $11,148.

**Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claimants and equity interest holders would receive in a chapter 7 liquidation.

**Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. Thus the Plan Proponent has provided projected financial information herein.

The following assumptions are made in the projections of cash flow:
1. The figures contained in the cash flow projections were obtained from the Debtor's 2020, 2021 and 2022 tax returns and monthly operating reports filed since April 2022.
2. Thereafter, the projections assume a modest increase in income and expenses.

The final Plan payment is expected to be paid on 8/31/27.

You should consult with your attorney, accountant or other financial advisor if you have any questions pertaining to the Plan or these projections.

**Article 1: Summary**

This Plan of Reorganization (the Plan) under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of Michael Scott Mogan (the Debtor) from cash flow from operations, or future income.

Non-priority general unsecured creditors holding allowed claims will receive distributions in the full amount they are owed. This Plan also provides for the payment of secured claims.

All creditors and equity security holders should refer to this Plan for information regarding the precise treatment of their claim.

You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

**Article 2: Classification of Claims and Interests**

Class 1: The claim of Select Portfolio Servicing; to the extent allowed as a secured claim under §506 of the Code, and such claim is unpaired.

Class 2: The claim Bank Of America, to the extent allowed as a secured claim under §506 of the Code, and such claim is unpaired.

Class 3: General non-priority unsecured claims allowed under § 502 of the Code.

**Article 3: Treatment of Claims and Interests Under the Plan**

Impaired Classes of Claims. (Entitled to Vote on Plan)

Class 2: The claims of (1) Select Portfolio Servicing; and (2) Bank Of America to the extent allowed as a secured claim under §506 of the Code and unimpaired thus they are not allowed to vote.

Class 3: General non-priority unsecured claims allowed under § 502 of the Code. that are not disputed shall be paid in full over a period of thirty six (36) months after the Effective Date. The deferred cash payments to holders of allowed Class 3 Allowed Claims shall be paid in bi-annual payments on February 28 and August 31st, with the first payment being due on February 28, 2025.

The claims related to any judgment for Airbnb Inc, Dave Willner, Jeff Henry and Sanaz Ebrahini and separate claim for any judgment of Dave Willner, Jeff Henry and Sanaz Ebrahini nor proof of claim filed by Sacks, Glazier and Lodise LLP and Sacks Ricketts and Case LLP are not included in the foregoing figure and shall receive no distributions under the Plan as such judgments are expected to be forgiven in their entirety.

**Article 4. Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

4.01 Unclassified claims - Under section § 1123(a)(1), there are no administrative expense claims, nor priority tax claims.

4.02 Administrative expense claims - There are no holders of an administrative expense claim allowed under § 503 of the Code, that will have be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 Priority tax claims – There are no holders of a priority tax claim that will have be paid consistent with § 1129(a)(9)(C) of the Code.

3.04 Statutory fees - All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05 Prospective quarterly fees - All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

**Article 5: Allowance and Disallowance of** Claims

5.1 Disputed claim – A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order], and as to which either:

i. a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

ii. no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated

5.2 Delay of distribution on a disputed claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3 Settlement of disputed claims

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure

**Article 6: Background**

Michael Scott Mogan filed a voluntary petition a Chapter 13 case on February 22, 2022 that he later converted to a chapter 11 bankruptcy petition on April 4, 2022. The filing of the petition constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code. Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the Bankruptcy Code. The automatic stay prohibits most collection activities against Debtor and his property. There are certain exceptions set forth in § 362(b) of the Bankruptcy Code.

The first date scheduled for the meeting of creditors under § 341(a) of the Bankruptcy Code was May 5, 2022. The meeting took place as scheduled.

When Michael Scott Mogan filed this bankruptcy case, all of his property became property of the bankruptcy estate. Michael Scott Mogan was allowed to claim that certain property should be treated as exempt property and excluded from the bankruptcy estate. On March 8, 2022 debtor filed his list of claimed exempt property. Federal Rule of Bankruptcy Procedure 4003(b) requires that all objections to the claimed exemptions be filed not later than 30 days after the conclusion of the §341 meeting of creditors.

**6.1 Description of Assets**

Debtor filed schedules of all of his assets and liabilities on March 8, 2022 and on July 9, 2024 debtor filed his most recent amendment to Official Form 104 listing Creditors Who Have The 20 Largest Creditor Claims. Complete copies of the schedules are available from the Clerk of the Court. The primary assets of the bankruptcy estate, their estimated values and associated liens are:

| Description of Asset | Estimated Fair Market Value | Amount of Debt Secured by Liens Against this Asset | Value Available to Estate | Basis of Estimate of Value |
|---|---|---|---|---|
| Condo-1800 W, Roscoe St, #307, Chicago, IL 60657 | $270,000 | $214,708 | $55,292 | Zillow/recent sales for similar condos in same building. |
| 2007 Mercedes Benz | $3,815.00 | $0.00 | 3,815.00 | NADA Guide Trade-In Value |
| Misc. Personal Property | $4,000.00 | $0 | 4,000.00 | Estimate |
| | | TOTAL | $63,107 | |

4

Debtor has identified the following lawsuits that has or will be filed by him.

   X         Lawsuits arising under non-bankruptcy law:

| Defendants | Description of claim | Amount of Claim |
|---|---|---|
| Airbnb Inc., Dave Willner, Jeff Henry, Sanaz Ebrahini, Sacks Ricketts and Case LLP, Michele Floyd and Jacqueline Young | Abuse Of Process, IIED, Civil Conspiracy, Civil RICO and other personal injury claims. | Rule 12(b)(6) motion granted. Appeal denied. $0 value. |
| State Bar Of California, CA Bar board members, Patricia Guerrero, Carol Corrigan, Goodwin Liu, Leondra Kruger, Joshua Groban, Martin Jenkins and Kelli Evans | American With Disabilities Act violations, 42 USC 1983 claims and 15 U.S.C. §2 claim | Complaint dismissed with prejudice. Appeal pending in 9th Circuit Court Of Appeals. $0 value. |
| Airbnb Inc., Dave Willner, Jeff Henry, Sanaz Ebrahini, O'Melveny and Myers LLP. Dawn Sestito and Damali Taylor | Malicious prosecution and related claims. | Dismissed, appeal pending. $0 value. |
| William and Roxanne Hendricks, Kathrin Wanner And Kirsten Miller | Malicious prosecution and related claims. | Dismissed, appeal pending. $0 value. |
| Portfolio Media Inc. | Defamation claim. | Dismissed, appeal pending. $0 value. |
| Kellermeyer Godfryt Hart, P.C. Scott Sammons, Barry Love Craig Walden, Mark Anderon, Trent Stewart, Michael Locigno, and John Does 1-100 | Breach of fiduciary duty, misrepresentation and related claims | Discovery is ongoing, $33,000+ in damages. |
| Kellermeyer Godfryt Hart, P.C. Scott Sammons, Barry Love Craig Walden, Mark Anderson, Trent Stewart, Michael Locigno, and John Does 1-100 | Shareholder derivative action. for breach of fiduciary duty, misrepresentation and related claims | Court compelled arbitration, interlocutory appeal pending. |
| City Of Chicago and Roscoe Village Lofts Condominiun Assoc | Takings and declaratory judgment. | Declaratory judgment claim dismissed without prejudice. Takins claims |

| Defendants | Description of claim | Amount of Claim |
|---|---|---|
| U.S. Department Of Education | Complaint to Determine Dischargeability of Student Loans | Equitable relief. |
| Sacks Glazier Franklin Lodise LLP, Klinedinst PC and Natasha Mayat | Fair Debt Collection Practices Act | $1,000 + attorney fees and costs |
| Ricketts and Case LLP and Michelle Floyd and DOES 1-10 (Defendants) | Defamation | $50,000 value, lawsuit pending. |
| Select Portfolio Servicing (Potential Defendant) | American With Disabilities Act Sec. 504 and related claims. | Injunctive relief and $25,000. |
| American Arbitration Assoc. (Potential Defendant) | ADA and Sec. 504 violations, unjust enrichment & fraud claims. | Injunctive relief and $25,000. |
| American Arbitration Assoc. (Potential Defendant) | Declaratory Judgment claim | Equitable relief claims. $0 |

**Sources of Income**

In the last four calendar years, the debtor's primary sources of income have been:
Self Income from Employment (by him)

| Year | | Amount of Income |
|---|---|---|
| 2023 | Accounting/legal services | $46,000 |
| 2022 | Accounting/legal services | $48,000 |
| 2021 | Accounting/legal services | $48,442 |
| 2020 | Accounting/legal services | $42,829 |

**6.3 Description of Reorganization**

Debtor intends to reorganize his finances through a combination of the following:

__X__ Increased income. If this box is marked, complete the following:

Debtor primarily works as an accountant and attorney. He also plans to seek more family law litigation work which debtor has some experience in previously while also pursuing civil litigation work part time. Debtor has extensive experience representing clients in tax resolution matters in front of the IRS and various state authorities which includes most area of tax resolution matters except representation in tax court. Debtor has worked as a tax preparer for many years and in April 2024 he began working as an independent contractor preparing tax returns year round thus his annual income will increase. Debtor

had just been working for third party CPAs in tax season in recent years. Debtor also has a disability and the aforementioned efforts at diversifying his career are intended to offer Debtor a flexible schedule in an effort to continue to earn a living while monitoring his health. As stated below his projected income though 2027 is modest and any monthly payments over the term of the plan are minimal as stated below. Debtor also began working for an accounting firm July 31, 2024 where he has been employed part time until December 31, 2024 at a rate of $45 an hour and he will receive an annual salary of $100,000 beginning January 1, 2025.

Debtor believes that his income in each of the next four years will be:

| Year | Source | Income |
|---|---|---|
| 2024 | Employment/business | $65,000.00 |
| 2025 | Employment/business | $70,000.00 |
| 2026 | Employment/business | $70,000.00 |
| 2027 | Employment/business | $70,000.00 |
|  |  |  |
|  |  |  |

  X   Other:

The overhead for tax work for debtor's tax practice is primarily limited to fees for software and office expenses. The Debtor intends to increase his fees while maintaining same fixed overhead expenses. As revenue increases for additional part time work, expenses are generally more of a variable nature and are expected to increase in proportion to revenues. Debtor reduced annual business expenses based on actual expenses in recent months and his efforts to work remotely as an independent contractor.

**6.4 Classification and Treatment of Claims**

The following is the classification and treatment of claims under this plan:

| Class # | Description of Class | Impaired or Unimpaired | Total Amount of Claims Forecast to be in this Class | Interest Rate, if any | Terms of Repayment, including security, if any, and abandonment of collateral, if any (See Section 5 for a More Complete Description of any Abandonments) | Total payable in Months 1-12 | Total payable in Months 13-24 | Total payable in Months 25-36 |
|---|---|---|---|---|---|---|---|---|
| 1 | Secured Claim of Select Portfolio Servicing | Unimpaired | $157,119.22 | 4.5% | Per loan modification agreement. $717.34 per month | $8609. | $8609. | $8609. |
| 2 | Secured Claim of Bank Of America | Unimpaired | $25,856.00 | 0.00% | Loan is secured by debtor's real property, to be paid off if property is ever sold. | 0.00 | 0.00 | 0.00 |
| 3 | General Unsecured Claims | Unimpaired | $11,148.00 | 0.00% |  | $3,716 | $3,716 | $3,716 |
|  |  |  |  |  |  |  |  |  |
|  | TOTALS |  |  |  |  | $12,325 | $12,325 | $12,325 |

8

Only holders of claims that are "impaired" have the right to vote to accept or reject the plan. If a claim is not marked as impaired, it will be paid in accordance with any pre-petition contract that governs the claim. If there is a discrepancy between the payments reflected in the above chart and the pre-petition contract, the pre-petition contract will control.

Per the loan modification agreement, Debtor will pay Select Portfolio Service LLC his monthly mortgage payments and required real estate escrow payment directly as was the case before Debtor's bankruptcy petition was filed.

The forecast claims in this class are the amount of claims that the Debtor believes will ultimately be allowed by the Court. The following claims either have been made or are expected to be made and are undisputed:

| Class | Holder of Claim | Amount of Claim Asserted by Holder | Amount of Claim Agreed by | Description of Dispute |
|---|---|---|---|---|
| 1 | Select Portfolio Servicing | $25,856 | $25,856 | None. |
| 2 | Bank Of America | $25,856 | $25,856 | None. |
| 3 | General unsecured claims. | $11,148 | $11,148 | None. |
|   |   |   |   |   |
|   |   |   |   |   |

**6.5 Payment of Administrative Claims**

There are no administrative claims are the claims allowed under § 503(b) of the Bankruptcy Code for administration of this bankruptcy case.

**6.6 Payment of Priority, Unsecured Tax Claims of Governmental Units**

There are no claims held by governmental units of the type described in § 507(a)(8) of the Bankruptcy Code to be paid.

**6.8 Forecasts**

Based on the preceding forecasts of income and expenses and on the provisions of the plan, the Debtor provides these forecasts of his cash flow:

|  | Months 1-12 | Months 13-24 | Months 25-36 |
|---|---|---|---|
| Beginning cash balance | $0 | $0 | $0 |
|  |  |  |  |
| Income from Employment | $70,000 | $70,000 | $70,000 |
| Other income | $0.00 | $0.00 | $0.00 |
| TOTAL INCOME | $70,000 | $70,000 | $70,000 |
|  |  |  |  |
| Taxes on income | $4,000 | $4,000 | $4,000 |
| Escrow–RE taxes | $7,032 | $7,032 | $7,032 |
| Insurance | $1,800 | $1,800 | $1,800 |
| Household expenses | $2,400 | $2,400 | $2,400 |
| Mortgage | $8,609 | $8,609 | $8,609 |
| Business expenses | $25,969 | $25,969 | $25,969 |
| Transportation expenses | $2,000 | $2,000 | $2,000 |
| Medical and dental insurance | $3,600 | $3,600 | $3,600 |
| Recreation and entertainment | $4,000 | $4,000 | $4,000 |
| Condo Dues | $7,257 | $7,257 | $7,257 |
| TOTAL EXPENDITURES | $62,667 | $62,667 | $62,667 |
|  |  |  |  |

10

|  | Months 1-12 | Months 13-24 | Months 25-36 |
|---|---|---|---|
| NET CASH FLOW THIS PERIOD | $7,333 | $7,333 | $7,333 |
|  |  |  |  |
| Payments Unsecured Creditors | $1,858 | $1,858 | $1,858 |
| Cash Flow this Period after Plan Payments | $5,475 | $5,475 | $5,475 |
| Ending Cash balance | $5,475 | $10,950 | $16,425 |

11

**6.9 (a) Absolute Priority Rule--Cramdown**

This section only applies if a class of unsecured claims does not accept the plan. In that instance, the Debtor seeks confirmation of the plan pursuant to § 1129(b). The Absolute Priority Rule is contained in § 1129(b)(2)(B) of the Bankruptcy Code.

If a class of unsecured claims does not accept this plan, Debtor will (mark all that apply):

_____   Allege that the Absolute Priority Rule does not apply in a chapter 11 case in which the debtor is an individuals.

_____   Withdraw this plan.

_____   Sell or surrender all of their non-exempt property and pay any resulting proceeds to their creditors.

_____   Increase the distribution to the holders of unsecured creditors such that each holder is paid in full.

\_\_\_\_X\_\_\_\_   Other. Amend the bankruptcy Petition and Plan and proceed Under Subchapter V of Chapter 11 with permission from the Honorable Court.

**6.9 (b) Liquidation Analysis**

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the assets.

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest. This treatment satisfies the liquidation test under § 1129(a)(7)(A). Holders of priority claims are paid in full, with interest. This also satisfies the requirements of § 1129(a)(7).

Holders of general unsecured claims are forecast to receive a dividend of 100% of their allowed claim. Debtor has estimated that his assets, after payment of liens would generate the following amounts in a chapter 7 liquidation

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|
| Condo-1800 W. Roscoe, #307 Chicago, IL 60657 | $270,000 FMV less $16,200 real estate commissions (6%) = $253,800 | $214,708 | $39,092 | Zillow/recent sales of similar condos in building |

12

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|
| 2007 Mercedes Benz | $3,815 | $0 | $3,815 | NADA Guide, Trade in value. |
| Misc. Personal Property | $4,000 | $0 | $4,000 | Estimate. |
| | | | | |
| | | | | |
| | | TOTAL | $46,897 | |

In a chapter 7 liquidation, the estimated liquidation value of $67,892 would be applied to the chapter 7 Trustee's fees and expenses and then to unsecured claims. This would produce the following:

| | |
|---|---:|
| Liquidation Value | $46,897 |
| Estimated Trustee's Fees and expenses | ($4,000) |
| Bankruptcy Exemptions (IL) | ($21,400) |
| Total available for holders of unsecured claims | $21,497 |
| Estimated unsecured claims | $535,863 |
| Estimated percentage recovery in liquidation | 4.0% |

Because the plan forecasts to pay holders of general unsecured claims distributions in the full amount amounts owed they are not impaired. Furthermore any chapter 7 liquidation is forecast to pay them only 4.0% of unsecured claims (which would include $524,715 in student loan debt and $11,148 in general unsecured claims) after estimated trustee fees and exemptions under the Bankruptcy Code, this plan satisfies the liquidation test as to holders of general unsecured claims.

**Prepayment**

Any claim may be prepaid at any time, without penalty. Interest as provided in this plan must be paid through the date of prepayment.

**Article 7. Means for Implementation of the Plan**

7.1 This Plan is self-executing. The Debtor shall not be required to execute any newly created documents to evidence the claims, liens or terms of repayment to the holder of an Allowed Claim.

13

7.2 Funding - The Plan shall be funded by proceeds from the Estate's available cash, cash equivalents, proceeds generated from business operations. The Debtor projects that its cash flow will be sufficient to make the Plan payments.

7.3 As of the Effective Date, and subject to the terms and conditions of the Plan, the Debtor shall be revested with all of its property, subject only to outstanding liens as provided by this Plan. The Debtor shall be entitled to manage its affairs without further order of this Court, subject only to the restrictions set forth in this Plan.

7.4 Distributions for Claims or Interests Allowed as of the Effective Date - Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the day prior to the Effective Date or as soon thereafter as is practicable. Any distribution to be made on or before the Effective Date pursuant to this Plan shall be deemed as having been made on the day prior to the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

7.5 The Debtor shall serve as "Disbursing Agent" for all Distributions required by the Plan.

7.6 Delivery of Distributions in General - Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtor's records unless proofs of claim or transfers of claim filed pursuant to the Bankruptcy Rules supersede such addresses.

7.7 Undeliverable and Unclaimed Distributions - Any funds distributed to the Holders of Allowed Claims that remain unclaimed by such claimants for three (3) months after disbursement will become property of the Debtor. Any claimant failing to claim property distributed pursuant to the Plan will not be able to recoup such property in subsequent distributions and will be deemed barred from any future claim in law or equity. If the distribution to any Holder of an Allowed Claim is returned as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Debtor is notified in writing of such Holder's then current address.

7.8 Means of Cash Payment - Payments of Cash made pursuant to the Plan shall be in U.S. Dollars and shall be made, at the option and in the sole discretion of the Debtor, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Debtor. Cash payments to foreign creditors may be made, at the option of the Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**Article 8: General Provisions**

8.1 Definitions and rules of construction

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rule of

14

Bankruptcy Procedure, will have the meaning ascribed thereto in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, as applicable.

    a) "**Administrative Claim**" means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under §§ 503(b), 507(a)(1), 507(b) or, if applicable, § 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the business of the Debtor (such as wages and salaries) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under §§ 330, 331 or 503(b) of the Bankruptcy Code (also defined herein as "Fee Claims") to the extent incurred prior to the Effective Date; (c) all fees and charges assessed against the Debtor' Estate under §1930, chapter 123 of title 28, United States Code; (d) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business after the Petition Date; and (e) Claims under Section 503(b)(9) of the Bankruptcy Code.

    b) "**Allowed Claim**" means a Claim: (a) that has been Scheduled by the Debtor in its Schedules, and was not scheduled as disputed, contingent, and has not been supplanted by a later Filed Claim; (b) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (d) that is Allowed (i) by

a Final Order; (e) relating to a rejected executory contract or unexpired lease that is not a Disputed Claim or has been allowed by a Final Order, but only if a Proof of Claim was timely Filed or has otherwise been deemed timely Filed under applicable law; (f) that is allowed pursuant to the terms of the Plan, which shall not, unless otherwise specified herein or by applicable Bankruptcy Court order, for any purposes under the Plan, include interest, penalties, premiums or late charges on such Claim from and after the Petition Date, unless required by §506(b); or (g) that is allowed by an agreement

between the Holder of the Claim and the Debtor pursuant to any stipulation or other agreement;

    c) "**Bankruptcy Case**" means this case entitled In re Michael Scott Mogan, pending before the United States Bankruptcy Court for the Northern District of Illinois as Case No. 22-01957.

    d) "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

    e) "**Debtor**" means Michael Scott Mogan.

    f) "**Disputed Claim**" means any Claim, or portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and as to which the Debtor interposes a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any claim otherwise disputed by the Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

g) "**Disputed Claim Amount**" means (a) with respect to contingent or unliquidated Claims, the amount estimated by the Bankruptcy Court for purposes of distributions in respect of such Claim in accordance
with §502(c) of the Bankruptcy Code; or (b) the amount set forth in a timely filed proof of claim.

h) "**Effective Date**" means that date thirty (30) days after the Confirmation Date

i) "**Petition Date**" means February 22, 2022, the date on which the Petition was filed by the Debtor commencing the Bankruptcy Case.

l) "**Priority Claims**" means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a) of the
Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

m) "**Priority Tax Claims**" means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a)(8).

n) "**Pro Rata Share**" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in the Class to which such Allowed Claim belongs that are not claims which have been disallowed by final order of the Bankruptcy Court or by agreement.

## 8.2 Effective Date

The Effective Date of this Plan is the first business day following the date that is 30 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

   a. **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan

   b. **Binding effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

   c. **Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

   d. **Controlling effect**

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a Plan Document, exhibit or schedule to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Illinois, without giving effect to any principles of conflicts of law of such jurisdiction.

   e. **Retention of Jurisdiction**

Pursuant to §§105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law.

**Article 9: Other Provisions**

**9.1 Executory Contracts and Leases**

Except for the assumed contracts and leases listed in the following chart, all executory leases and contracts are rejected as of the Effective Date. Proofs of claim for damages arising from the rejection of an executory lease or contract must be filed not later than 30 days after the Effective Date. Claims filed after that date will not be paid.

| Contracting Party | Description of Contract | Amount Required to Cure Any Default |
|---|---|---|
| None. | | |
| | | |
| | | |

**9.2 Claims Objections**

Claims objections must be filed not later than 30 days after entry of the order confirming the plan. This deadline may be extended by the Court, on motion by a party in interest. Any such motion must be filed not later than 30 days after entry of the order confirming the plan.

**9.3 Discharge, Vesting and Effective Date**

The provisions of 11 U.S.C. 1141(d), as applicable to individual debtors, will govern any discharge of debts granted to the debtor.

The Effective Date of this plan is the 15th day after entry of the order confirming the plan, unless the confirmation order is stayed. If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay. No party may act pursuant to this plan prior to the Effective Date.

**9.4 Miscellaneous**

The plan does not provide for payment of the Department of Education's claim.  In exchange, the Debtor agrees that he will stipulate to the dismissal of the adversary proceeding filed against the Department of Education, No. 23 A 171, that the debt owed to the Department of Education will not be discharged in this bankruptcy case, whether or not this case is converted, and that he will not file another adversary proceeding against the Department of Education in this bankruptcy case, whether or not this case is converted.  In addition, notwithstanding this plan or the automatic stay, the Department of Education is permitted to service and collect the student loans it holds that are owed by the Debtor.

Upon confirmation of Debtor's third amended plan of Reorganization in Chapter 11, the automatic stay Select Portfolio Servicing is subject to under 11 U.S. Code § 362 is terminated.

17

## Conclusion

This Plan of Reorganization has been respectfully submitted on this 8th day of December 2024 by the Debtor.

Dated: December 8, 2024

s/ Michael Mogan
_____

Michael Mogan
